May it please the Court, my name is Curtis Pierce, I'm the attorney for the petitioner, Mr. Tariq Chougui. Could you speak up a little bit? Yes, Your Honor. The petitioner is the national from Algeria who has been involved in protests, and he's a protest singer, and he fears that he'll be harmed by Islamic fundamentalists if he goes back to Algeria. There were two issues with this case. The judge determined that he was not credible, and the reason for this, and he was in fact caught in a lie, he lied about his entry date. According to American immigration law, in order to apply for asylum, someone must apply within one year from their last date of entry. Otherwise, they're not eligible unless they demonstrate extraordinary circumstances or changed circumstances. So at his hearing, he had actually entered the United States in 1995 and never left. He had, based on advice he got from a notary and later an attorney, but actually to be clear, the advice was just from a notary, he lied on his entry date, and he indicated that he left and came back to the United States in 2000 in order to qualify for asylum. This came out in the course of the hearing after Judge Martin appeared likely to grant the case, and when this misrepresentation came to light, the judge denied all forms of relief, not only asylum. He also denied withholding of removal and relief pursuant to Article 3 of the Convention Against Torture. The first thing he lied about was when he left or if he left, right? Correct. Right. And the fact that a notario told him to do that under our case law gets him nowhere, right? That's true, Your Honor. The answer to that is yes, isn't it? Yes, unless he represented himself as an attorney. I think that's the whole case. So then the hearing recommenced, and this description that he gave of the treatment he had received in his native Algeria, which he said occurred when he had left the United States, it turned out he hadn't left the United States at all. That's correct. He admitted this when he was confronted with a driver's license application that had been made during the period when he first said that he was back in Algeria. That's correct. And his explanation is he lied about the dates. The substance of what happened to him and all his threats and reason for fearing to return to Algeria are all true. The stuff that he said happened in Algeria when he was really in the United States. Right. So he maintains that this all happened. It happened prior to 1995 as opposed to prior to 2000. Now, what's interesting here is, and this lie came to light, he apologized to the court. The judge did not make what we call a frivolous determination. Immigration law states that if the adjudicator finds that an application is frivolous, if any of the elements, material elements, are fabricated, the adjudicator may make a frivolous finding and the person is barred, the application is barred. Well, but he did make an adverse credibility claim. He made an adverse credibility claim. Hopefully you're not going to encourage I.D.s to make frivolous findings comparable to adverse credibility findings because the consequences are materially different. The consequences are much more severe. So the fact that he didn't say it was frivolous didn't, I mean, we'd be here on a different ground perhaps. But my point, Your Honors, is that the fact he didn't make a frivolous finding has some inferences. It suggests he didn't think that the story was a complete fabrication. And one of the issues here we have in our appeals is did the fabrication or the misrepresentation go to the heart of the claim? And opposing counsel has argued in her brief it does, and I'm arguing that it does not. Did he continue to lie even when confronted with the business about applying for a driver's license? I believe once that came to light, I think he admitted that he never lied. Well, you know this record counsel better probably than the judges do, but my information is that he was confronted with the driver's license application and said, okay, I did that. I was really here. But in the package of material that the government, in an unusually able effort to gather up evidence, confronted him with the fact that he had not only applied for a driver's license, but if I recall correctly, that he had asked the DMV to change his address. And he denied that he had done that. I was just pouring over the record this week, and I think at one point you were correct. He did deny that. But again, does that go to the heart of his asylum claim, that he's going to be harmed for his democratic views by Islamic fundamentalists if he goes back to Algeria? Well, if the guy's an outright liar in court, certainly the immigration judge can take that into account and did. So what is it that lends any credibility to his claim of persecution, either past or future torture? What is it that? Well, the facts in his declarations. Other than the fact that he lied about the DMV, which is not directly related to his asylum claim, he lied about those facts. He had been caught and confronted with the fact that during the period of time he claimed to have been persecuted in Algeria, he was really here in the United States overstaying his visa. But again, he had an incentive, and he was misadvised to do that. The incentive was to be eligible for asylum. He needed to be here. He needed to apply within one year of his entry. That's why he stuck to that story until he had no choice. But if he was not even in Algeria during the time period that he's claiming he would have been persecuted, does that not go to the heart of his claim? I think it does not. Why not? Because with all other respects to his testimony about his fears and testimony about what happened to him, the threats, he was credible and consistent. He simply changed the dates. Yes, he said he was here. I'm sorry. He said he was in Algeria while he was actually in the United States. He changed the dates by five years. Five years is a long time material. Right. So it ages out. Circumstances change. Can I get an answer to my question, which was, what is it that corroborates, gives us any reason to believe that that wasn't also a lie? The judge didn't. What else corroborates it? I don't have an answer to your question other than his testimony was, in all other respects, consistent. So are you asking us to accept as true his allegations of past persecution? And fears of future persecution. And fear of future persecution. And I'm respectfully urging this panel to consider that, under international treaty, the United States does not deport individuals who will be harmed if they are in our country. So you want this panel to decide that, absent the adverse credibility finding tied to those elements, because your theory is it doesn't go to the heart of the claim, that he's entitled to asylum, withholding of removal, and cat relief. Well, he's entitled to, yes, withholding of removal and cat, I'm saying, because there's a clear probability of persecution. I think when the judge, who believed all aspects of his testimony, and then when the misrepresentation came to light and said, I'm denying everything, I think Judge Martin acted emotionally. I think that's what the record shows. So because of this misrepresentation regarding the date. Refresh me. You say that the judge did, in fact, find him initially credible. Yes. The record, at one point, there's a discussion with the government attorney, and it looked like they talked about, hey, if everything is okay, would the government not object to a grant? I don't have the exact page, but, yes, he seemed to be. The record shows he was inclined to grant this. Now, with respect to asylum, we're also arguing ineffective assistance of counsel, because, again, based on his declarations, he had the basis for arguing change in circumstances. And what had happened is when the misrepresentation came to light, he apologized to the court, and the attorney, Ms. Herrera, didn't say one word. She essentially didn't make any effort at all to rehabilitate him, let alone arguing change circumstances or extraordinary circumstances. How about give an explanation? She didn't even provide an explanation for his misrepresentation. He hadn't told her about that before. According to the record, they had a long conversation. Okay? And then, according to the record, she brought him to the court, and he said, I'm sorry, Your Honor, everything else is true. Until that moment, he had not confided in her the truth, either. That's correct. But I think it's incumbent upon a competent attorney. Why did he benefit from ineffective assistance of counsel when at least some of his problems were of his own doing? Well. At least some. Right. He was being kind. He's not an attorney. The first person he went to told him, this is how it is. It was a notary, Mr. Ocram. He said, look, if you want to qualify for asylum, you need to change the date. And it's unfortunate he followed that advice. In immigration proceedings, it's unfortunate people often lie. And in immigration, we allow for lies. In adjustment of status cases, there are waivers. Someone could commit fraud, but if they're immigrating through a job or employment and they can show hardship to a citizen parent or citizen spouse, they can overcome the fraud. And in the asylum context, I think people are afraid they lie to U.S. consulates to get out of their country. And we often forgive that. Again, what the petitioner did is obviously not commendable. But I'm arguing, we're arguing two things. Even with the record as we have it, I think he still qualifies for withholding and CAT. And, again, not asylum with the record as we have it, because he didn't establish those extraordinary circumstances. But, again, with respect to the other aspect of this claim, ineffective assistance of counsel, if this panel renders a decision that allows him to have another hearing, he would presumably have an opportunity to develop the extraordinary, the changed circumstances, the events that happened in the years 2000, 2001, and 2002, that would support an asylum claim. Now, I understand that on the petitioner. You're over time, so we've got the time. Thank you, Your Honors. Thank you. Good morning, Your Honors, and may it please the Court. My name is Catherine Clark, appearing on behalf of the Attorney General. For over three years, petitioner deceived his attorney, an asylum officer, and the immigration judge, as to his whereabouts during the period when he claimed he was experiencing persecution in Algeria. These lies were not merely about dates. They were about whether he was experiencing persecution at all during that time. Let's assume that we agree with the government on that point. Our case law is that even in the face of an adverse credibility determination, a petitioner can be eligible for withholding or cat relief. Isn't that correct? The case law Can you start with a yes or no? Have I accurately stated the law? The Have I accurately stated the law? No, because here the basis for the withholding and cat claims is the same as the basis for the asylum claim. Sounds like the correct answer would be yes, Your Honor, that is the law. But in this case, is that what you're saying? That would be another way of putting it. So if Your Honor would prefer I put it that way, I can say yes. I just want to know whether my understanding of the law is correct, that withholding and cat relief can be granted even in the face of an adverse credibility determination. And the answer to that question is? Yes, under limited circumstances, when the basis for withholding and cat is somehow different from the basis for asylum. Can you point to me on the record where this IJ used the findings with respect to asylum to deny withholding and cat? That would be, I believe it is the page 10 of the immigration judge's decision. The court further finds that respondent has failed to establish by credible evidence that there is a clear probability, that's the withholding standard, that his life or freedom would be threatened in Algeria, on account of any of the statutory grounds established in section 241B3, which is, of course, the withholding section of the statute. And later on the same page. I'm sorry, what page are you on? This is on page 10 of the immigration judge's decision. Can coordinate that with the record page. But after just one moment, because the next sentence is where the immigration judge addresses the cat issue. The court further finds that the respondent has failed to establish that there are substantial grounds for believing, i.e., that it is more likely than not that he would be in danger of being tortured in Algeria for any reason. So that would be where the immigration judge makes those findings. And the board, indeed, affirmed that finding as well in its December 28, 2006, decision. And, excuse me, noting that the immigration judge found that the respondent was not credible. And on the following page, finding no clear error in that determination. And, indeed, discussing that determination in detail as well. And the basis for that determination, particularly as cited, again, in detail by the board, was the issue of Petitioner's whereabouts during the time when he claimed he was being persecuted. And the fact that he did not own up to his whereabouts until he was about to be caught in the lie, or, in fact, was caught in the lie by the DHS, which had presented the DMV documents. And in Is the lie the reason why there was a change in the position between the original IJ hearing in September of 2003, in which the government agreed that the Petitioner had presented a meritorious claim and then the later finding of insufficient evidence? It was. Anything else? The The The lie. The lie was the reason. The lie was discovered because the government conducted the fingerprint checks between those two times. So, in some sense, I suppose it was the fingerprint checks that were the reason. But it was the fingerprint checks that led to discovery of the lie. Therefore, it was, in fact, the lie. And, indeed, Petitioner still bases his claim on threats that he says he received in Algeria. Those threats that he purportedly presented evidence of were letters dated from 1999 and 2000. He still has not accounted for the date issues in those letters. If he was not in Algeria receiving threats during that time, and he's still basing his claim on those letters, that still remains an unresolved and very significant inconsistency that goes directly to the heart of his claim. Was there any independent documentary evidence in the record that would support the fear of persecution during that critical time period? Other than his own declaration in letters, I understand, in the time period which you mentioned. But was there anything else that would support his claim? Only if the – I'm sorry not to be able to give a yes or no answer, but only if the court believes that he was, in fact, a political singer, which is, to the government's mind, an open question. And, in fact, there is no basis for such a belief. There is evidence that political singers were harmed in Algeria during that period of time and subsequent to that period of time as well. However, that is only relevant to Petitioner's claim if he, in fact, was a political singer, if he was in any way connected to those movements. And because Petitioner was not credible, those statements and those facts may, in fact, not be relevant at all. You were about, I think, to give us the ER site for page 10 of the IJ's decision. Yes. Would the courts leave just one moment to track that down? Thirty-three. That is 92. Thank you. Thank you. Thirty-three. No, the immigration judge's decision would be 92. The board's decision – that would be the board's decision. Okay. And – That's funny. I've got page 10, 33. What was the page – That's fine. Okay. Page 10 is what you were reading. There are two board decisions in the record, so that may be – I'm looking at the IJ's. Oh, okay. Oh, and it's page 10 of the immigration judge's decision. So that would be – there would be two pages on that. One would be 10, the immigration judge's decision page, and then the – and that's probably page 10 of the record of proceedings, as opposed to the EOR record of proceedings, as opposed to the administrative record before the courts. So there would be two page numbers on each page. It does get somewhat complicated, and – I have a typed transcript page. Right. And I – June 27, 2005, is that the right date? Right. That would be the correct date. Yes, and there's a base stamp, 33. The base stamp would be the administrative record page. Okay. I don't have any – So that's the AR site. Right. And – All right. So there are multiple sites going on, and I – Okay, we're all on the same page. At any rate, we're all on the same page. One way or another. Exactly. And – We won't make an adverse credibility claim. Thank you, Your Honor. And Petitioner – last point, Petitioner did continue to lie after he – after the initial DMV documents were presented. He initially made up the story that he left the United States in 1996, and that was why there was one initial DMV ID application. And then at the following and final hearing, he claimed that he – when he was ultimately caught out in the lie, and his attorney was – and his attorney prompted him to do so, he admitted the truth of the claim. He did not – there's no evidence in the record that he presented any evidence or any story to his attorney about anything related to changed circumstances that would have prompted her to make that sort of argument before the immigration judge. So looking at the record as the – looking at the information that would have been available to the attorney at the time, she did not, in fact, render ineffective assistance on this record. And the board did not abuse its discretion, therefore, in denying the motion to reopen. In any case, regardless of the changed circumstances finding, the adverse credibility finding would provide substantial evidence for the denial of relief in any case. So the – either ground for denial is sufficient. At any point did the I.J. say, because you lied, I don't believe your testimony that the substance of what happened to you before you came to the United States is correct? This is, again, on page 9 of the immigration judge's decision. And, again, I can go back and get the record's site. I'm sure we can find it. Right. The government, in the middle of the page, the government has established in this case that Respondent's account of his whereabouts between March 1996 and December 31, 2000, including the 1999 to 2000 period of time during which the alleged persecution took place, was a fabrication. That Respondent attempted to perpetrate fraud on the Court for the purposes of obtaining the requested relief. He continues to maintain that the – that the remainder of his underlying claim is true. And then a few lines down, Respondent's explanation for his conduct, for his misrepresentations to the Court, is neither credible nor reasonable, and Respondent's false testimony about the dates of his alleged persecution go to the heart of his claim. Accordingly, the Court finds that the Respondent is not credible and has failed to meet his burden of proof as to asylum. And so, again, the short answer to the Court's question is yes. And if – Did he make the same findings with respect to withholding and cap? That would be – that would go to the – yes, because those would be – He just told me, by quoting it, that it relates to asylum. Did he make the same finding with respect to withholding and cap? The – he did not – not in as many direct terms, however. The following paragraph that I mentioned before is where he does address that issue. And he does do so specifically. The Board also, in its December 28, 2006 order, affirms that – those findings. Thank you. If the Court has no further questions, I would request that the petition for review be denied. Thank you. I'll give you a minute. Right. And there are two administrative records here, if I could help the panel. And it's AR-126 is one of them. This is where the judge was inclined to grant. And this is, again – so, again, there are two transcripts. One for the motion to reopen. It's a consolidated case. I make no excuses for the petitioner. He – he did make a misrepresentation. He was caught in that. But I would urge this panel to err on the side of caution and issue a ruling that allows him to have another hearing, and we can find out what happened before he came here in 1995. And how about the current country conditions now in Algeria? In other words, if we – if this panel enters the decision that's – that upholds the Board's decision and he will be harmed and tortured if he goes back to Algeria, that would be unfortunate. Thank you. Thank you. Thank you, counsel. We appreciate the argument. Case is submitted. Next case for argument is Bloom Garden v. Bureau of Prisons.
judges: Zouhary, Hawkins, Fisher